Slip Op. 12-28

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NSK CORPORATION,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES and<br>UNITED STATES INTERNATIONAL<br>TRADE COMMISSION,<br><br>        Defendants,<br><br>        and<br><br>TIMKEN US CORPORATION and<br>MPB CORPORATION,<br><br>        Defendant-Intervenors. | **Before:**  **Gregory W. Carman, Judge**<br>               **Timothy C. Stanceu, Judge**<br>               **Leo M. Gordon, Judge**<br><br>**Consol. Court No. 07-00223** |

## OPINION

[Dismissing the consolidated action in part for lack of subject matter jurisdiction and in part for failure to state a claim upon which relief can be granted]

Dated: March 6, 2012

      *Robert A. Lipstein* and *Alexander H. Schaefer*, Crowell & Moring, LLP, of Washington, DC, for Plaintiff.

      *David S. Silverbrand* and *Courtney S. McNamara,* Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant United States. With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Franklin E. White, Jr.*, Assistant Director, and *Andrew G. Jones*, Office of Assistant Chief Counsel, United States Customs and Border Protection, of counsel.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of General Counsel, U.S. International Trade Commission, of Washington, DC, for Defendant U.S. International Trade Commission. With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel for Litigation.

*Geert De Prest*, Stewart and Stewart, of Washington, DC, for Defendant-Intervenors. With him on the briefs were *Terence P. Stewart*, *Amy S. Dwyer*, and *Patrick J. McDonough.*

CARMAN, JUDGE: Plaintiff brought two cases[1] challenging the constitutionality of the

Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd

Amendment").[2] These cases were consolidated by order of the court under Consol. Ct.

No. 07-00223. (Order, Consol. Ct. No. 07-00223, Jan. 25, 2012, ECF No. 83.) Plaintiff

claims that it unlawfully was denied affected domestic producer ("ADP") status, which

would have qualified it to receive distributions for fiscal years 2005-2007 under the

CDSOA. The consolidated case is now before the Court on dispositive motions.

Defendant United States moves to dismiss each complaint pursuant to USCIT

Rule 12(b)(5) for failure to state a claim upon which relief can be granted. (Def.'s Mot. to

Dismiss for Failure To State a Claim Upon Which Relief Can Be Granted, Ct. No.

07-00223, May 3, 2011, ECF No. 65 and Ct. No. 07-00281, May 2, 2007, ECF No. 47 ("U.S.

---

[1] First Amended Compl., Ct. No. 07-00223, July 13, 2007, ECF No. 5 ("Compl. 1") and Compl., Ct. No. 07-00281, July 30, 2007, ECF No. 4 ("Compl. 2").

[2] Pub. L. No. 106-387, §§ 1001-1003, 114 Stat. 1549, 1549A-72-75 (codified at 19 U.S.C. § 1675c (2000)), repealed by Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).

Mot.").) The United States International Trade Commission ("ITC") moves for judgment

on the pleadings pursuant to USCIT Rule 12(c). (Def. U.S. Int'l Trade Comm'n's Mot. for

J. on the Pleadings, Ct. No. 07-00223, May 2, 2011, ECF No. 62 and Ct. No. 07-00281,

May 2, 2011, ECF No. 46 ("ITC Mot.").) Defendant-Intervenors Timken US Corp. and

MPB Corp. (collectively, "Timken") also move for judgment on the pleadings pursuant

to USCIT Rule 12(c). (Def.-Intervenors' Mem. in Supp. of Their Mot. for J. on the

Pleadings with Respect to NSK's Compls., Ct. No. 07-00223, May 2, 2011, ECF No. 64

and Ct. No. 07-00281, May 2, 2011, ECF No. 48 ("Timken Mot.").)

        Defendant United States also filed a motion to dismiss for lack of ripeness as

part of its response to a subsequently-withdrawn application by Plaintiff. (Def. U.S.

Customs & Border Prot.'s Mot. to Dismiss & Resp. in Opp'n to Pl.'s App. for Writ of

Mandamus 9-12, Court No. 07-00223, Aug. 22, 2007, ECF No. 31 ("U.S.'s Ripeness

Mot.").) The government never withdrew this motion, to which Plaintiff responded.

(Pl. NSK Corp.'s Resp. to Mots. to Dismiss 5-7, Court No. 07-00223, Apr. 15, 2011, ECF

No. 61.)

        For the reasons set forth below, Plaintiff's claims related to fiscal year 2005

distributions will be dismissed for lack of jurisdiction, Plaintiff's other claims will be

dismissed for failure to state a claim upon which relief can be granted, the government's

motion to dismiss for lack of ripeness will be denied, and the consolidated action will be

dismissed.

## BACKGROUND

Plaintiff NSK Corp. ("NSK") is a domestic producer of ball bearings that

participated in a 1988 investigation conducted by the ITC that culminated in the

issuance of antidumping duty orders on ball bearings and spherical plain bearings from

Germany, France, Italy, Japan, Romania, Singapore, Sweden and the United Kingdom.

(See Compl. 1 ¶¶ 1, 13–14, 16.) During those proceedings, NSK responded to the ITC's

questionnaires. (Compl. 1 ¶ 14, Compl. 2 ¶ 5.) NSK declined to indicate to the ITC that it

supported the antidumping petition. (Compl. 2 ¶ 20.) The ITC has never included NSK

on a published list of ADPs. (Compl. 1 ¶ 22-24, Compl. 2 ¶ 13.)

Plaintiff brought these cases in 2007 to challenge the government's refusal to

add it to the list of entities potentially eligible for distributions for fiscal years

2005–2007. (Compl. 1, Prayer For Relief; Compl. 2, Prayer For Relief.) Shortly after

NSK's cases were filed, the court stayed the actions pending final resolution of other

litigation raising the same or similar issues.[3] Following the decision of the Court of

Appeals for the Federal Circuit in SKF USA Inc. v. U.S. Customs and Border Protection,

---

[3] The Court's order stayed the action until final resolution of Pat Huval
Restaurant & Oyster Bar, Inc. v. United States, Consol. Ct. No. 06-0290. (See Order,
Ct. No. 07-00223, Aug. 31, 2007, ECF No. 37.)

556 F.3d 1337 (Fed. Cir. 2009) ("SKF USA II"), this Court ordered Plaintiff to show cause

why its cases should not be dismissed. (Order, Ct. No. 07-00223, Jan. 3, 2011, ECF No.

42; Order, Ct. No. 07-00281, Jan. 3, 2011, ECF No. 24.) After Plaintiff responded to the

Court's order, the Court lifted the stay in both of Plaintiff's cases for all purposes.

(Order, Ct. No. 07-00223, Feb. 9, 2011, ECF No. 45; Order, Ct. No. 07-00281, Feb. 9, 2011,

ECF No. 27.)[4] The motions now before us were filed thereafter.

## JURISDICTION

The Court exercises subject matter jurisdiction over this action pursuant to

section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i)(4), which grants the

Court of International Trade exclusive jurisdiction of any civil action commenced

against the United States that arises out of any law providing for administration and

enforcement with respect to, inter alia, the matters referred to in § 1581(i)(2), which are

"tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other

than the raising of revenue."  The CDSOA, out of which this action arises, is such a law.

See Furniture Brands Int'l, Inc. v. United States, 35 CIT __, __-__, 807 F. Supp. 2d 1301,

1307-10 (2011).

---

[4] Customs has made no CDSOA distributions affecting this case and has
indicated that it will not do so until March 9, 2012 at the earliest.  (See Ashley Furniture
Industries, Inc. v. United States, 36 CIT ___, ___, Slip Op. 12-14, at 3 n.3 (Jan. 31, 2012).)

DISCUSSION

The CDSOA amended the Tariff Act of 1930 to provide for an annual

distribution (a "continuing dumping and subsidy offset") of duties assessed pursuant to

an antidumping duty or countervailing duty order to affected domestic producers as

reimbursements for qualifying expenditures.[5] 19 U.S.C. § 1675c(a)-(d). ADP status is

limited to petitioners, and interested parties in support of petitions, with respect to

which antidumping duty and countervailing duty orders are entered, and who remain

in operation. Id. § 1675c(b)(1). The CDSOA directed the ITC to forward to Customs,

within sixty days after an antidumping or countervailing duty order is issued, lists of

persons potentially eligible for ADP status, i.e., "petitioners and persons with respect to

each order and finding and a list of persons that indicate support of the petition by

letter or through questionnaire response." Id. § 1675c(d)(1). The CDSOA also provided

for distributions of antidumping and countervailing duties assessed pursuant to

existing antidumping duty and countervailing duty orders and for this purpose

_____

[5] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

directed the ITC to forward to Customs a list identifying potential ADPs "within

60 days after the effective date of this section in the case of orders or findings in effect

on January 1, 1999 or thereafter . . . ." Id. The CDSOA directed Customs to publish in

the Federal Register, prior to each distribution, lists of ADPs potentially eligible for

distributions based on the lists obtained from the ITC, id. § 1675c(d)(2), and to distribute

annually all funds, including accrued interest, from antidumping and countervailing

duties received in the preceding fiscal year. Id. § 1675c(d)(3), (e).

The Court of Appeals, in SKF USA II, upheld the CDSOA against

constitutional challenges brought on First Amendment and equal protection grounds.

556 F.3d at 1360 ("[T]he Byrd Amendment is within the constitutional power of

Congress to enact, furthers the government's substantial interest in enforcing the trade

laws, and is not overly broad. We hold that the Byrd Amendment is valid under the

First Amendment."); id. ("Because it serves a substantial government interest, the Byrd

Amendment is also clearly not violative of equal protection under the rational basis

standard.").[6]

Plaintiff challenges the constitutionality of the CDSOA on three grounds. In

Count One of its complaints, Plaintiff challenges the "in support of the petition"

---

[6] SKF USA II reversed the decision of the Court of International Trade in SKF
USA Inc. v. United States, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006) ("SKF USA I"),
which held the petition support requirement of the CDSOA unconstitutional on Fifth
Amendment equal protection grounds.

requirement of the CDSOA ("petition support requirement") on Fifth Amendment

equal protection grounds. (Compl. 1, ¶¶ 26–29; Compl. 2, ¶¶ 32–35.) In Count Two of

its complaints, Plaintiff challenges the petition support requirement on First

Amendment grounds. (Compl. 1, ¶¶ 30–33; Compl. 2, ¶¶ 36–39.) In Count Three of its

complaints, Plaintiff claims that the petition support requirement violates the Fifth

Amendment due process guarantee by basing NSK's eligibility for disbursements on

past conduct, <u>i.e.</u>, support for a petition.  (Compl. 1, ¶¶ 34–37; Compl. 2, ¶¶ 40–43.)

      In ruling on motions to dismiss made under USCIT Rule 12(b)(5), we dismiss

complaints that do not "contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)

(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In ruling on motions

to dismiss under USCIT Rule 12(b)(1), we must dismiss all claims over which we

determine that the Court lacks jurisdiction. <u>See</u> USCIT R. 12(h)(3). For the reasons set

forth below, we conclude that the Court has no jurisdiction over Plaintiff's claims

pertaining to fiscal year 2005 distributions, and that each of Plaintiff's other claims fails

to state a claim upon which relief can be granted. The Court will therefore dismiss this

consolidated action.

I.      **Plaintiff's Claim for Fiscal Year 2005 CDSOA Distributions Is Barred by the
        Statute of Limitations**

        Timken moves to dismiss NSK's claims to the extent that these claims pertain

to fiscal year 2005,[7] on statute of limitations grounds. (Timken Mot. 10-13; see also First

Am. Answer ¶ 28, Court No. 07-00281, Mar. 4, 2011, ECF No. 43 ("Further, avers that

NSK's action commenced on July 30, 2007, for fiscal year 2005 distributions is barred by

the two-year statute of limitations in 28 U.S.C. § 2636(i).") Timken asserts, without

explaining why, that the statute of limitations in § 2636(i) is jurisdictional, and argues

that NSK's claims regarding fiscal year 2005 distributions accrued upon Customs'

publication on June 1, 2005 of a notice of intent to distribute funds for the 2005 fiscal

year. (Timken Mot. 11-13.) Because NSK filed suit on July 30, 2007—more than two

years later—Timken argues that the Court should dismiss the fiscal year 2005 portion of

NSK's claims for lack of jurisdiction. (Id. at 13; see also Def.-Int.'s Reply to NSK Corp.'s

Opp. to Def.-Int.'s Mot. for J. on the Pleadings 12-14, Ct. No. 07-00223, July 18, 2011, ECF

No. 75.) NSK, in response, cites our decision in Pat Huval Restaurant & Oyster Bar, Inc.

v. United States, 32 CIT ___, ___, 547 F. Supp. 1352, 1362 (2008) for the proposition that

the statute of limitations for a CDSOA case like this one is triggered "when distribution

payments [are] made." (Pl. NSK Corp.'s Resp. to Mots. to Dismiss and Mots. for J. on

---

        [7] These claims make up a part of the relief sought with respect to Counts 1-3 of
Compl. 2. (See Compl. 2, Prayer for Relief ¶¶ 3-5.)

the Pleadings 13, Ct. No. 07-00223, June 27, 2011, ECF No. 71 ("Pl.'s Resp.").) Since fiscal

year 2005 distributions were "announced on November 29, 2005," NSK claims that its

July 30, 2007 complaint fell within the two year limitations period. (Id.) For the reasons

given below, we determine that NSK's claims regarding fiscal year 2005 distributions

are barred by the two-year statute of limitations and will dismiss those portions of

NSK's claims for lack of jurisdiction pursuant to USCIT Rule 12(b)(1).

First, according to John R. Sand & Gravel Co. v. United States, 552 U.S. 130

(2008), SKF USA II, 556 F.3d at 1348, and 28 U.S.C. § 2636(i), we conclude that § 2636(i)

constitutes a limitation on the government's waiver of sovereign immunity and that the

statute of limitations is therefore jurisdictional. See Pat Huval Restaurant & Oyster Bar,

Inc. v. United States, 36 CIT ___, ___, Slip Op. 12-27, at 14-15 (Mar. 1, 2012).

Second, we determine that NSK's claims regarding fiscal year 2005

distributions accrued upon the publication of notice of Customs' intent to distribute

CDSOA funds for that fiscal year. See Distribution of Continued Dumping and Subsidy

Offset to Affected Domestic Producers, 70 Fed. Reg. 31,566 (June 1, 2005). We base this

determination on our reading of SKF USA II, where the Court of Appeals determined

that "[t]he earliest SKF's claim [challenging the Fiscal Year 2005 distribution] could have

accrued was when Customs published its notice of intent to distribute duties under

[the] Byrd Amendment for fiscal year 2005," on June 1, 2005.  SKF USA II, 556 F.3d at

1349; see also 36 CIT ___, Slip Op. 12-27 at 13-14. Just as did the plaintiff in SKF USA II,

NSK knew on this date that Byrd Distributions would be available for fiscal year 2005.

NSK also knew that it would not be participating in that distribution. Therefore, upon

publication of the June 1, 2005 notice, NSK had a "complete and present cause of

action." See 556 F. 3d at 1348 (quotation omitted).[8] NSK's subsequent request in 2007 to

be added to the ITC list of potential ADPs only applied to fiscal year 2007 distributions

and could not have affected the date on which agency action regarding NSK's claim for

fiscal year 2005 distributions became final and on which NSK's cause of action for fiscal

year 2005 distributions accrued. (See Compl. 1 ¶ 22.)

Therefore, we must dismiss the portions of the claims in NSK's second

complaint that relate to fiscal year 2005 distributions for lack of jurisdiction, since that

complaint was not filed until July 30, 2007, nearly two months after the end of the two

year limitations period that commenced on June 1, 2005. 28 U.S.C. § 2636(i);

USCIT R. 12(b)(1).

## II.    Plaintiff's Equal Protection and First Amendment Challenges to the CDSOA Are Foreclosed by Binding Precedent

Plaintiff fails to plead facts allowing the Court to conclude that its equal

protection and First Amendment challenges to the CDSOA are distinguishable from

---

[8] In Pat Huval Restaurant & Oyster Bar, Inc. v. United States, 547 F. Supp. 2d at 1361–62, focusing on the date of injury, we concluded that "a new cause of action accrued every time payments were made pursuant to that statutory scheme."

claims brought, and rejected, in <u>SKF USA II</u>. The complaints contain no assertions that

the CDSOA was applied to NSK in a different manner than the statute was applied to

other parties who did not support a petition. Plaintiff admits that "NSK did not

participate as a petitioner, or support the petition, as regards to [sic] the investigations

that led to the antidumping duty orders." (Compl. 2 ¶ 20.) The facts as pled place NSK

on the same footing as other potential claimants who did not support the petition, such

as the plaintiff in <u>SKF USA II</u>. <u>See</u> 556 F.3d at 1343 ("Since it was a domestic producer,

SKF also responded to the ITC's questionnaire, but stated that it opposed the

antidumping petition."). Consequently, because Plaintiff does not allege that there was

anything unique about the way the CDSOA was applied to it, Plaintiff's equal

protection and First Amendment challenges in Counts One and Two of its complaints

are foreclosed by the holding in <u>SKF USA II</u> and must be dismissed pursuant to USCIT

Rule 12(b)(5) for failure to state a claim upon which relief can be granted.

　　　　Plaintiff's argument that the recent Supreme Court cases <u>Snyder v. Phelps</u>,

131 S. Ct. 1207 (2011), and <u>Citizens United v. FEC</u>, 130 S. Ct. 876 (2010), effectively

overturn <u>SKF USA II</u> is unpersuasive. (<u>See</u> Pl.'s Resp. 6-8.) While it is conceivable that

intervening Supreme Court precedent could effectively overturn a previous circuit

court decision, we are not convinced that such is the case here.

In <u>Snyder</u>, the Supreme Court held that the First Amendment provided a valid

defense to certain tort liability, because the defendant's speech, while "hurtful," was

made in "a public place on a matter of public concern," and was therefore "entitled to

'special protection' under the First Amendment." <u>Snyder</u>, 131 S. Ct. at 1218–19. We

conclude that <u>Snyder</u> has no bearing on the constitutionality of the CDSOA. To

conclude otherwise is to ignore the Supreme Court's disclaimer that

> **[o]ur holding today is narrow**. We are required in First Amendment cases
> to carefully review the record, and **the reach of our opinion here is limited
> by the particular facts before us**. As we have noted, "the sensitivity and
> significance of the interests presented in clashes between First Amendment
> and [state law] rights counsel relying on limited principles that sweep no
> more broadly than the appropriate context of the instant case."

<u>Snyder</u>, 131 S. Ct. at 1220 (<u>quoting</u> <u>Florida Star v. B.J.F.</u>, 491 U.S. 524, 533 (1989))

(bracket in original) (emphasis added). Because this case does not involve the First

Amendment as a defense to tort liability for inflammatory speech, nor a question

regarding the clash of First Amendment and state law rights, the Court finds <u>Snyder</u>

inapplicable.

<u>Citizens United</u> is similarly inapplicable. In that case, the Supreme Court

invalidated a law that imposed "an outright ban, backed by criminal sanctions" on

corporate spending on "electioneering communications," which the Supreme Court

regarded as a ban on political speech. <u>Citizens United</u>, 130 S. Ct. at 897 (stating that the

prohibitions at issue were "classic examples of censorship."). While "it might be

maintained that political speech simply cannot be banned or restricted as a categorical

matter," the Supreme Court noted that at a minimum,"[l]aws that burden political

speech are 'subject to strict scrutiny,'" and evaluated the challenged law under that

framework. Id. at 898 (quoting FEC v. Wisconsin Right to Life, Inc., 551 U.S. 449, 464

(2007)). The statute in Citizens United thus contrasts sharply with the CDSOA, which

"does not prohibit particular speech." SKF USA II, 556 F.3d at 1350. We find nothing in

Citizens United that impliedly overturns the holding of SKF USA II. As SKF USA II

itself noted, "[s]tatutes that are prohibitory in nature are rarely sustained, and **cases**

**addressing the constitutionality of such statutes are of little assistance in determining**

**the constitutionality of the far more limited provisions of the Byrd Amendment.**" Id.

(emphasis added). This Court agrees; Citizens United is of little assistance.

NSK also asserts that Sorrell v. IMS Health Inc., 131 S. Ct. 2653 (2011), requires

this Court to "review anew the level of scrutiny applied to the CDSOA's petition

support requirement." (Pl.'s Resp. at 8.) We recently considered and rejected a similar

argument that Sorrell required a different level of scrutiny than that imposed by SKF

USA II on the CDSOA petition support requirement. Furniture Brands, 807 F. Supp. 2d

at 1314-15. Noting that the statutes involved in Sorrell and SKF USA II differed in

nature, degree of effect on expression, and purpose, we opined in Furniture Brands that

"the CDSOA does not have as a stated purpose, or even an implied purpose, the

intentional suppression of expression." Id. at 1315. As we also discussed in our

Furniture Brands opinion, the Supreme Court in Sorrell concluded that the Vermont

statute at issue in that case could not survive under a particular First Amendment

analysis that was not at variance with the analysis that the Court of Appeals applied to

the CDSOA in SKF USA II and identified as the "well-established Central Hudson test."

Id. (citing SKF USA II, 556 F.3d at 1355, in turn citing Central Hudson Gas & Electric v.

Public Serv. Comm'n of New York, 447 U.S. 557, 566 (1980)). We conclude here, as we

did in Furniture Brands, that Sorrell does not require us to subject the CDSOA to a new

First Amendment analysis departing from that applied by the Court of Appeals in SKF

USA II.

        For the reasons we have discussed, we will dismiss Plaintiff's equal protection

and First Amendment claims in Counts One and Two of its complaints for failure to

state a claim upon which relief can be granted.

III.        **Plaintiff's Claims As to Fiscal Year 2007 Distributions Were Ripe upon
            Publication of the Notice to Distribute**

        The government's motion to dismiss Compl. 1 argues that NSK's fiscal year

2007 claims were not ripe because Customs had yet to make a final determination as to

whether NSK would receive a distribution for fiscal year 2007, when NSK initiated its

actions in July 2007. (U.S.'s Ripeness Mot. at 9-11.) Contrary to the argument in the

government's motion, we conclude that NSK's claim for 2007 CDSOA distributions was

ripe at the time NSK brought its actions. We construe NSK's claim for fiscal year 2007 to

challenge, on constitutional grounds, the decision by the ITC to deny NSK status as a

potential ADP. After NSK requested, on March 12, 2007, that the ITC place it on the list

of ADPs for that fiscal year, it received a denial of its request from the ITC on May 18,

2007. (Compl. 1 ¶¶ 22-23.) That denial was confirmed in the list of ADPs included in the

notice of intent to distribute CDSOA funds for fiscal year 2007, as published by Customs

on May 29, 2007, which list did not include NSK. Compl. 1 ¶ 24 (citing Distribution of

Continued Dumping and Subsidy Offset to Affected Domestic Producers, 72 Fed. Reg.

29,582 (May 29, 2007)). NSK filed a certification with Customs even though it was not so

listed, Compl. 2 ¶ 15, but Customs, on the facts as pled by NSK, had no discretion to

add NSK to the list of potential ADPs.[9] See 19 U.S.C. § 1675c(d)(2) (providing that the

"list of affected domestic producers potentially eligible for the distribution" is to be

"based on the list obtained from the Commission . . . ."). Therefore, we find no lack of

ripeness in NSK's claim for fiscal year 2007 distributions.

---

[9] We could take judicial notice that in the May 29, 2007 notice of intent to distribute, Customs announced that "[c]laimants who are not on the USITC list but believe they are nonetheless eligible for a CDSOA distribution under one or more antidumping and/or countervailing duty cases must, as do all claimants that expressly appear on the list, file their certification(s) within 60 days after this notice is published." Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 72 Fed. Reg. 29,582, 29,582 (May 29, 2007). However, our conclusion that NSK is challenging the action of the ITC, not that of Customs, causes us to conclude that this announcement does not affect a determination of ripeness.

IV.      **The Petition Support Requirement Does Not Violate the Due Process
         Guarantee Due to Retroactivity**

In Count Three of each complaint, Plaintiff claims that the CDSOA is

impermissibly retroactive, in violation of the due process guarantee of the Fifth

Amendment, because it "determined eligibility for CDSOA offsets based on private

speech that occurred in the past" and because "the retroactive application of the

CDSOA is not supported by a legislative purpose." (Compl. 1 ¶¶ 35-37; Compl. 2

¶¶ 41-43.) This claim is not clearly stated, but we construe it as challenging the statutory

provisions by which the CDSOA awards distributions based on orders already existing

as of enactment and conditions eligibility on expressions of support for a petition

occurring prior to enactment.  See 19 U.S.C. § 1675c(d)(1). In New Hampshire Ball

Bearing v. United States, 36 CIT __, __-__, Slip Op. 12-2, at 8-14 (Jan. 3, 2012), we

recently considered a claim essentially identical to Plaintiff's retroactivity claims and

concluded that "the retroactive reach of the petition support requirement in the CDSOA

is justified by a rational legislative purpose and therefore is not vulnerable to attack on

constitutional due process grounds." 36 CIT at __, Slip Op. at 14. We reasoned that it

would "not [be] arbitrary or irrational for Congress to conclude that the legislative

purpose of rewarding domestic producers who supported antidumping petitions . . .

would be 'more fully effectuated' if the petition support requirement were applied both

prospectively and retroactively." 36 CIT at __, Slip Op. at 13 (quoting Pension Benefit

Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730-31 (1984)). We conclude, therefore,

that Congress' choice to base potential eligibility for CDSOA disbursements on a

decision of whether to support the petition made prior to the enactment of the CDSOA

did not violate NSK's Fifth Amendment due process rights. Based on this conclusion,

the Court will dismiss the due process claims in Count Three of the complaints for

failure to state a claim upon which relief can be granted.

## Conclusion

          For the foregoing reasons, all claims in the complaints in this consolidated

action must be dismissed. Timken's motion for judgment on the pleadings will be

granted as to claims for fiscal year 2005 funds, over which the Court determines that it

lacks jurisdiction because those claims are barred by the statute of limitations. Although

the government's motion to dismiss on ripeness grounds will be denied, its motion to

dismiss for failure to state a claim upon which relief can be granted pursuant to USCIT

Rule 12(b)(5) will be granted and Plaintiff's remaining claims will therefore be

dismissed. As Plaintiff's claims will all be dismissed pursuant to other motions, the

ITC's motions for judgment on the pleadings will be denied as moot. Plaintiff has not

shown, either in responding to the Court's order to show cause or in opposing the

motions to dismiss, that there is a plausible basis for Plaintiff to seek leave to amend the

complaints, and the Court sees no such basis. Therefore, the Court shall enter judgment

dismissing this action.


                                                      ___/s/Gregory W. Carman_____
                                                        Gregory W. Carman, Judge


Dated:    March 6, 2012
          New York, New York